Best Cartage, Inc. v. Stonewall Packaging, LLC, 2011 NCBC 15.

| | | |
|---|---|---|
| STATE OF NORTH CAROLINA | ) | IN THE GENERAL COURT OF JUSTICE |
| | ) | SUPERIOR COURT DIVISION |
| COUNTY OF FORSYTH | ) | 10 CVS 4283 |
| | ) | |
| BEST CARTAGE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STONEWALL PACKAGING, LLC, and | ) | |
| JACKSON PAPER MANUFACTURING | ) | |
| COMPANY, | ) | |
| | ) | **ORDER AND OPINION** |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| GGG, INC. d/b/a GRISANTI, GALEF | ) | |
| and GOLDRESS as Receiver for | ) | |
| STONEWALL PACKAGING, LLC, | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |
| | ) | |

{1} This matter is before the Court on Defendant Jackson Paper Manufacturing Company's Motion to Dismiss. For the reasons stated below, the motion is GRANTED.

> *Carruthers & Roth, P.A. by J. Patrick Haywood and Rachel S. Decker for Plaintiff.*
>
> *Long, Parker, Warren, Anderson & Payne, P.A. by Philip S. Anderson for Defendant Stonewall Packaging, LLC and for Defendant-Intervenor GGG, Inc. d/b/a Grisanti, Galef and Goldress as Receiver for Stonewall Packaging, LLC.*
>
> *Wyrick Robbins Yates & Ponton LLP by Lee M. Whitman and McKenna Long & Aldridge LLP by Gregory S. Brow for Defendant Jackson Manufacturing Company.*

Gale, Judge.

## I. INTRODUCTION

{2} The action arises from a transportation services contract Plaintiff Best Cartage, Inc. ("Best Cartage") entered with Defendant Stonewall Packaging, LLC ("Stonewall"), knowing it to be a limited liability company. Defendant Jackson Paper Manufacturing Company ("Jackson") is neither a party to the contract nor referred to in it directly or indirectly. The contract disclaims any third-party beneficiaries, except for Stonewall's lender, which is specifically identified, and for which specific rights are enumerated. Best Cartage initially brought its contract claim solely against Stonewall. After Stonewall was placed into receivership, by its Amended Complaint Best Cartage alleges that it negotiated the contract with Jackson after Stonewall had been formed, believed Jackson to be Stonewall's partner, but elected to contract solely with Stonewall. Best Cartage claims that Jackson is individually liable under the contract because it was a partner or joint venturer. Alternatively, Best Cartage seeks to pierce Stonewall's corporate veil to impose Stonewall's contract liabilities on Jackson.

{3} Best Cartage invokes theories of partnership, joint venture, and corporate liability based on broadly stated allegations. Nevertheless, the Amended Complaint omits key assertions necessary to state actionable claims upon which relief can be granted, and inferences necessary to provide those elements are inconsistent with the facts alleged. In particular, the Amended Complaint does not support an inference that the contract made with Stonewall individually was a partnership contract for partnership purposes, and it does not adequately allege a wrong or injustice beyond the underlying breach of contract that would justify piercing Stonewall's corporate veil to reach Jackson. Accordingly, all claims in the Amended Complaint against Jackson should be dismissed. Best Cartage's recovery, if any, should be against Stonewall, the party with which it elected to contract.

## II. PROCEDURAL BACKGROUND

{4} Best Cartage initiated this action in Forsyth County Superior Court on June 7, 2010, by a Complaint naming Stonewall as the sole defendant and

containing a single claim for breach of contract.  The Complaint was served on June 9, 2010, the same day that Stonewall was placed into receivership by the Jackson County Superior Court on petition by Stonewall's lender, Atlantic Capital Bank.[1] Stonewall's receiver intervened on September 28, 2010.  On November 23, 2010, Best Cartage moved for leave to file its Amended Complaint in this action to assert claims against Jackson.  The Honorable Stuart Albright, sitting in Forsyth County, granted leave to file the Amended Complaint on December 13, 2010.  The case was then designated as a complex business case and assigned to the undersigned.

{5} The Amended Complaint attaches and incorporates the agreement between Best Cartage and Stonewall.  The Amended Complaint carries forward the breach of contract claim against both Stonewall and Jackson and adds four new claims to impose that contract liability on Jackson, including: 1) partnership by estoppel; 2) joint venture; 3) de facto partnership; and 4) piercing of the corporate veil.[2]  These new claims seek to impose liability on Jackson for Stonewall's breach of its contract with Best Cartage.  Jackson timely moved to dismiss all claims asserted against it by the Amended Complaint.  The motion has been fully briefed, and the Court heard oral argument.

## III. STATEMENT OF FACTS[3]

{6} Best Cartage is a North Carolina corporation based in Forsyth County.  It is a contract carrier authorized by the Interstate Commerce Commission.  Stonewall

---

[1]  (*See* Def. Jackson Paper Manufacturing Company's Mem. of Law in Supp. of Mot. to Dismiss Pursuant to Rule 12(b)(6) 4.)  While the Court has not been furnished all of the filings in Forsyth County and Jackson County, the Court understands from statements made at oral argument that this date is not in dispute.

[2]  Best Cartage concedes that Jackson did not itself directly breach the contract.  Its liability, if any, for Stonewall's breach of contract would be through the added claims.

[3]  The statement of facts assumes all the allegations of the Amended Complaint as true for purposes of the motion to dismiss.  The parties disagree as to whether the Court should consider certain press statements referred to but not expressly incorporated by the Amended Complaint.  Without deciding which party is correct, the Court did not need to and did not consider these additional items in reaching its conclusions.

is a Delaware limited liability company[4] with its principal place of business in Sylva, Jackson County, North Carolina. Stonewall manufactured parts of cardboard boxes, incorporating materials manufactured by others. The Amended Complaint asserts that Stonewall was formed at Jackson's insistence to vertically integrate the manufacture and assembly of cardboard boxes and to incorporate a middle layer into the cardboard sheets manufactured by Jackson.

{7} Best Cartage and Stonewall executed an agreement attached to the Amended Complaint as Exhibit A, incorporated by the Amended Complaint, and titled "Exclusive Transportation Agreement – Stonewall Packaging, LLC, Sylva, North Carolina and Best Cartage, Inc., Kernersville, North Carolina – November 5, 2009" ("Agreement"). Paragraph 17 of the Amended Complaint alleges that Stonewall had been formed several months before the Agreement was executed. Best Cartage alleges that Jackson, not Stonewall, negotiated the terms of the Agreement with Best Cartage, and that one of Jackson's officers signed the Agreement on Stonewall's behalf.

{8} Best Cartage alleges that when entering the Agreement, it was aware of and relied on the fact that Stonewall and Jackson were partners or engaged in a joint venture. More specifically, Paragraphs 35 and 36 of the Amended Complaint allege:

35. Plaintiff relied upon the strength and reputation of Defendant Jackson in entering into the Agreement and in purchasing the equipment necessary to fulfill Plaintiff's obligations under the Agreement.

36. Based on the representations of Defendants through words and conduct as described herein, Plaintiff executed the Agreement and purchased equipment necessary to fulfill Plaintiff's obligations under the Agreement, which because of

---

[4] Best Cartage argues that at least portions of the motion to dismiss must be denied because the motion would require making a choice of law determination when Stonewall's corporate citizenship cannot be determined from paragraph 18 of the Amended Complaint, which asserts only that Stonewall is organized pursuant to the laws of a state other than North Carolina. However, the Agreement incorporated into the Amended Complaint makes clear that Stonewall is a Delaware limited liability company.

Defendants' breach of the Agreement was a detrimental change in position for Plaintiff.[5]

{9} Best Cartage asserts that Jackson made both public and private statements that it was in a joint venture or partnership with Stonewall.[6] More specifically, the Amended Complaint refers to statements made by Jackson to obtain tax incentives which were shared between the two companies. As evidence of a partnership or joint venture, Best Cartage further alleges that Jackson undertook a series of actions on Stonewall's behalf without compensation from Stonewall, including site selection and acquisition, equipment selection, purchasing efforts and other actions on which Jackson employees labored. The Amended Complaint does not, however, assert that Stonewall and Jackson shared all profits and losses for Stonewall's operations or that Stonewall and Jackson each had the right to direct or control the actions of the other.

{10} The Agreement provides for an initial term of December 1, 2009 until November 30, 2012, with subsequent extensions. Best Cartage was to be Stonewall's exclusive transporter, and it was required to provide transportation services on a daily basis. The Agreement includes a choice of law provision that provides that the construction and performance of the Agreement is to be governed by North Carolina law. This choice of law provision does not address extra-contractual claims.

{11} Best Cartage and Stonewall were the only parties to the Agreement, although Stonewall's lender is also expressly referred to by name. The Agreement

---

[5] While Best Cartage has suggested that the Amended Complaint was occasioned solely by information about Jackson learned in discovery before the Amended Complaint was filed, these allegations make clear that Best Cartage was aware of the alleged partnership or joint venture at the time it entered into the Agreement and that it chose to enter the Agreement with Stonewall alone. Referring to paragraphs 34 and 35 of the Amended Complaint, Best Cartage states in its brief that: "[b]ased on the strength and reputation of Defendant Jackson, Plaintiff was induced by Defendant Jackson's employee to execute a contract with Defendant Stonewall, believing that Defendants Stonewall and Jackson were partners." (Br. in Opp'n to Def. Jackson Paper Manufacturing Company's Mot. to Dismiss 2.)

[6] It does so as a predicate for asserting a statutory claim for partnership by estoppel. N.C. Gen. Stat. § 59-46 provides that when such public representations are made, the party claiming the benefit of a partnership by estoppel need not prove that it was aware of the representations.

includes a merger clause. The Agreement makes no reference to Jackson or any other partner or joint venturer. The Agreement prohibits assignment. It also expressly disclaims any third-party beneficiaries, except for specific rights enumerated in favor of Stonewall's lender.

{12} Best Cartage alleges it acquired thirty-seven tractor-trailers to service the Agreement.[7] Stonewall ceased operations at an unspecified date prior to May 12, 2010. As a result, the Amended Complaint asserts that, as of May 12, 2010, Best Cartage had direct damages totaling $500,678.48, of which the predominant component is unpaid freight invoices, and consequential damages of $1,315,336.51, representing the loan balance resulting from the tractor-trailers acquisition.

{13} Best Cartage alternatively alleges that if no partnership or joint venture liability is imposed on Jackson, Jackson so dominated Stonewall as to justify piercing the corporate veil to impose Stonewall's obligations on Jackson. Paragraph 55 of the Amended Complaint broadly alleges: "Upon information and belief, Defendant Jackson so controlled and dominated Defendant Stonewall in order to commit a wrong, to perpetuate the violation of a legal duty, was dishonest and unjust, and in contravention of Plaintiff's legal rights." The Amended Complaint is sparse as to any allegation of what this wrong or duty is, other than Stonewall's underlying breach of contract. In an effort to assert such a wrong, Paragraph 53 of the Amended Complaint asserts that Jackson did not actually sell its component medium paper to Stonewall, so that upon receivership Jackson was able to retrieve its product from Stonewall.[8] Best Cartage does not allege any fraud or deception in

---

[7] The receiver has not moved to dismiss the contract claim against Stonewall. However, its position stated in the Case Management Report maintains that a related entity, not Best Cartage, acquired the equipment, and that Best Cartage is not entitled to assert consequential damage claims related to this purchase. That question is beyond the bounds of the current motion but is an issue that deserves early resolution.

[8] Best Cartage apparently implies that Jackson thereby defrauded creditors because it was able to retrieve inventory that would have otherwise been available for sale to generate proceeds to be shared among all creditors. Such an implication would further require an assumption that Jackson was an unsecured creditor and that the raw material had not been acquired through a secured credit arrangement, which would be enforceable by attachment or repossession. The Amended Complaint makes no such allegations.

negotiating the Agreement, and again alleges that it was aware when entering the Agreement that Jackson and Stonewall were in a partnership or joint venture.

## IV. STANDARD OF REVIEW

{14} Pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6), the appropriate inquiry for a motion to dismiss is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Crouse v. Mineo,* 189 N.C. App. 232, 237, 658 S.E.2d 33, 36 (2008); *Harris v. NCNB Nat'l Bank of N.C.,* 85 N.C. App. 669, 670–71, 355 S.E.2d 838, 840–41 (1987). "The complaint is to be liberally construed, and the court should not dismiss the complaint 'unless it appears beyond a doubt that [the] plaintiff could prove no set of facts in support of his claim which would entitle him to relief.'" *Holloman v. Harrelson,* 149 N.C. App. 861, 864, 561 S.E.2d 351, 353 (quoting *Dixon v. Stuart,* 85 N.C. App. 338, 340, 354 S.E.2d 757, 758 (1987)), *disc. review denied,* 355 N.C. 748, 565 S.E.2d 665 (2002).  However, dismissal is warranted when the complaint "may consist . . . of facts which will necessarily defeat the claim as well as where there is an absence of law or fact necessary to support a claim." *Sutton v. Duke,* 277 N.C. 94, 102–03, 176 S.E.2d 161, 166 (1970). "When considering a motion under Rule 12(b)(6), the court is not required to accept as true any conclusions of law or unwarranted deductions of fact in the complaint." *Branch Banking & Trust Co. v. Lighthouse Fin. Corp.,* 2005 NCBC 3 ¶ 8 (N.C. Super. Ct. July 13, 2005).

## V. ANALYSIS

{15} Best Cartage's four claims against Jackson fall generally into two categories that draw upon separate legal principles.  The first three claims seek to impose direct individual liability on Jackson through recognized theories of partnership liability, of which joint venture liability is a part.  These include the claims of an actual or implied partnership or joint venture agreement, or alternatively the imposition of a partnership by estoppel.  The fourth claim seeks to

pierce Stonewall's veil as a limited liability company to reach Jackson through its alleged domination of Stonewall to accomplish a wrong or injustice. This claim is measured by corporate law. The contrast between the two types of claims is evidenced by a recent statement of our Supreme Court, that "shareholders in a corporation are insulated from personal liability for acts of the corporation, but partners in a partnership are not insulated from liability. Stated differently, no corporate veil exists between a general partnership and its partners." *Ron Medlin Constr. Co. v. Harris,* 704 S.E.2d 486, 490, 2010 N.C. Lexis 1079, at *12 (N.C. 2010) (citations omitted). They also require a different choice of law analysis. The partnership and joint venture claims depend on finding the Agreement to be a partnership contract. The Agreement's choice of law provision, which calls for the application of North Carolina law, should control those claims. The piercing of the corporate veil claim arises outside the contract, and the choice of law is unclear. The Court determines that, here, the outcome of that claim does not depend on the choice of law. The Court now addresses these two categories of claims separately.

A. The Partnership and Joint Venture Claims

{16} In the more traditional case, a plaintiff seeks to impose individual partnership liability based on an agreement entered in the partnership name. Here, by its Amended Complaint, Best Cartage seeks to impose individual partnership liability on Jackson based on a contract entered in the name of Stonewall, which Best Cartage alleges to be a fellow partner. That alleged fellow partner is itself a limited liability company. The different nature of the claim is amplified by the fact that Best Cartage asserts that it was clearly aware of the alleged partnership when it elected to enter a contract solely in the name of an individual partner, with the contract making no reference to and preserving no claims either against a partnership or joint venture or other partners or venturers.

{17} In North Carolina, it is well established that a partner can be held individually liable for the obligations of the partnership. N.C. Gen. Stat. §59-45(a). Joint ventures are "governed by substantially the same rules" as partnerships.

*Jones v. Shoji*, 336 N.C. 581, 585, 444 S.E.2d 203, 205 (1994). The issue, then, is whether Best Cartage has adequately pled that the Agreement should be considered a partnership contract for a partnership of which Jackson is a partner. The Court concludes that it has not.

{18} The Amended Complaint is clear that Best Cartage entered into the Agreement with Stonewall, a Delaware limited liability company. It is clear that Stonewall was formed prior to the Agreement. Best Cartage clearly alleges that it was aware that Stonewall was partnering or venturing with Jackson at the time the Agreement was entered. Best Cartage does not allege that it was induced by any misrepresentation to believe that it was entering a contract in the name of the partnership or joint venture itself. Rather, it expressly alleged that it negotiated the contract with Jackson but entered the contract in Stonewall's name. The Agreement itself demonstrates that Stonewall is a limited liability company, not a partnership. Best Cartage included no language in the Agreement intended to preserve claims against any partnership, joint venture, or other members of either.

{19} Jackson contends that the fact that the contract is solely in Stonewall's name by itself precludes the imposition of liability for breach of that contract on Jackson. The issue is not quite that simple. While Stonewall itself was a limited liability company and not a partnership, this would not preclude it from partnering with Jackson. North Carolina law recognizes that in certain circumstances one partner may be held liable for the breach of a contract entered in the individual name of another partner rather than in the name of the partnership. *Ron Medlin Constr. Co.*, 704 S.E.2d at 491, 2010 N.C. Lexis 1079, at *13–16; *Brewer v. Elks*, 260 N.C. 470, 472–73, 133 S.E.2d 159, 161–62 (1963); *Hines v. Arnold*, 103 N.C. App. 31, 36–37; 404 S.E.2d 179, 183 (1991). It is more typical that a party intending to contract with a partnership obtains an agreement in the name of the partnership. A party seeking to impose partnership liability on a fellow partner when neither the partnership nor that partner is a party to the contract faces a particularized pleading burden to show that the contract was for partnership purposes.

{20} For example, in *Brewer*, a creditor sought to impose liability on a partner in a furniture business for a note signed individually by another partner. The court first noted the provisions of N.C. Gen. Stat. § 59-39, which provide that an agreement in the partnership name for the apparent purpose of partnership business may be binding even if the partner entering the contract had no authority to enter it, whereas, in contrast, an act of a partner not apparently for the carrying on of partnership business is not binding on the partnership unless it was authorized by other partners. 260 N.C. at 472, 133 S.E.2d at 161–62. The Court then held that for the note which was not in the partnership name and on its face had no indication it was entered into for the purpose of the partnership business, the creditor "must show that the partner was acting on behalf of the partnership in procuring the [contract] and was authorized to so act; or that the partners, with knowledge of the transaction, thereafter ratified the acts of their partner." *Id.* at 472–73, 133 S.E.2d at 162. Assuming adequate allegations and proof, a contract entered into by a partner in its own name but obviously in connection with partnership business may bind the partnership and its individual partners, particularly where the partnership later takes action pursuant to the contract. *Ron Medlin Constr. Co.*, 704 S.E.2d at 491–92, 2010 N.C. Lexis 1079, at *13–17. The relevant inquiry, then, is whether the Amended Complaint adequately pleads that an actual partnership exists, that the contract was for partnership purposes, and that the partnership authorized or ratified the Agreement entered into solely by Stonewall on behalf of the partnership.

{21} "A partnership is an association of two or more persons to carry on as co-owners of a business for profit." N.C. Gen. Stat. § 59-36. While some contract, either express or implied, is required to form a partnership, the contract can arise from conduct or words, and inferences can be drawn from the overall conduct of the parties to find a partnership. *Eggleston v. Eggleston,* 228 N.C. 668, 674–75, 47 S.E.2d 243, 247 (1948); *Hines v. Arnold*, 103 N.C. App. 31, 35, 404 S.E.2d 179, 182 (1991). A joint venture is a form of partnership governed by the same rules. *Jones,*

336 N.C. at  585, 444 S.E.2d at 205 (1994).[9]  As with partnerships, a joint venture requires a sharing of profits and the right of one party to control another.  *See Shelter Corp. v. BTU, Inc.*, 154 N.C. App. 321, 327, 572 S.E.2d 200, 204–05 (2002).

{22} In this case, through the allegations of the Amended Complaint, Plaintiff seeks to imply claims of a partnership or joint venture agreement based on the following: Jackson caused Stonewall to be formed to integrate manufacturing (¶ 5); Jackson solicited tax incentives for Stonewall and then shared in those incentives (¶¶ 6, 8); Jackson employees undertook various actions for Stonewall's benefit without being paid by Stonewall (¶¶ 9, 10, 12, 14); Jackson employees executed contracts on behalf of Stonewall (¶ 11); Jackson and Stonewall shared officers, directors and the same physical address (¶¶ 15–16); Jackson's officer negotiated the Agreement before it was executed by Stonewall (¶ 19); Jackson and Stonewall made public representations that they were partners (¶¶ 31–32); and Jackson and Stonewall "combined their labor, skills and property" (¶¶ 39, 42).  The sharing of profits and losses is an essential element of a partnership.  *Wilder v. Hobson*, 101 N.C. App. 199, 203, 398 S.E.2d 625, 628 (1990); *see also Ziekgraf Hardwood Co. v. Seay*, 60 N.C. App. 128, 133, 298 S.E.2d 208, 211 (1982).  The Amended Complaint does not directly assert that Stonewall and Jackson shared profits, income, or expenses other than tax incentives or that they had authority and control one over the other.

{23} The Court must be cautious when dismissing a complaint for failure to assert the necessary elements of a partnership.  *See Volkman v. DP Assocs.*, 48 N.C. App. 155, 157, 268 S.E.2d 265, 267 (1980).  But, having carefully considered the statutory and case law, and granting Best Cartage appropriate inferences, the Court concludes that Best Cartage has not alleged the minimal elements to show that the Agreement was entered into for partnership purposes, such that it should not be viewed as an individual contract with Stonewall.

---

[9]  For a more detailed discussion by this Court, see *Azalea Garden Board & Care, Inc. v. Vanhoy*, 2009 NCBC 9 ¶¶ 14–15 (N.C. Super. Ct. Mar. 17, 2009).

{24} First, it is then difficult to infer that the parties intended that the contract was undertaken for the benefit of the partnership when Best Cartage executed the Agreement solely in Stonewall's name, with no reference in the Agreement to Jackson, the partnership, or any joint venture, even though it had full knowledge at the time of execution that such a partnership or joint venture existed. Second, Best Cartage disclaimed the existence of any third party beneficiaries with rights pursuant to the Agreement. By disclaiming the rights of a third party, the Agreement explicitly denies the ability of any entity or person that is not Stonewall itself to assert any rights under the Agreement. Partnerships are creatures of contract, and mutuality of obligation is a fundamental tenet of contract law. The Court will not infer that Jackson would enter into an Agreement, taking on certain liabilities, but, simultaneously, eliminating its right to assert claims against the other party to the agreement.[10]

{25} Having found the allegations of the Amended Complaint do not state a claim for an actual or de facto partnership or joint venture, the Court examines whether the Amended Complaint states a claim for partnership by estoppel. The partnership by estoppel doctrine is codified by the Uniform Partnership Act, which has been adopted in North Carolina:

> When a person, by words spoken or written, by conduct, or by contract, represents himself . . . as a partner in an existing partnership or with one or more persons not actual partners, he is liable to any such person . . . who has on the faith of such representation, given credit to the actual or apparent partnership.

N.C. Gen. Stat. § 59-46(a). If the statements were made in a public manner, then the party seeking to impose a partnership by estoppel need not have been aware of the representations. *Id.* Subsection (b) of the statute provides that the person making such representations becomes the agent of others who acquiesce in the representation. In that sense, the statutory provision has been said to impose

---

[10] This same reasoning cuts against finding a partnership by estoppel, as this imposition depends on asserting equity. It would be inequitable to impose liability on Jackson while the Agreement disclaims that Jackson has rights against Best Cartage.

liability perhaps more akin to apparent authority than to estoppel. *Volkman,* 48 N.C. App. at 159, 268 S.E.2d at 268.

{26} In the present case, the problem for Best Cartage is that the Agreement was clearly between Best Cartage and Stonewall, rather than with a separate entity which Best Cartage believed to be a partnership. Best Cartage cannot claim that it believed Stonewall was itself a general partnership; the Agreement makes clear that Stonewall is a Delaware limited liability company. It is then also clear that Best Cartage did not extend "credit to the actual or apparent partnership" in reliance on Jackson's representations. The Amended Complaint does not state a claim for partnership by estoppel, and this claim is properly dismissed pursuant to Rule 12(b)(6).

{27} The Court has not been unmindful that North Carolina as a matter of public policy continues to adhere to a liberal pleading standard which confines early Rule 12(b)(6) dismissals to cases where it is clear the claim should not survive. But, neither has it been unmindful of the public policy which favors affording parties shelter from personal liability through use of a general corporate or limited liability company form. *See, e.g., Griffin Mgmt. Corp. v. Carolina Power & Light Co., Inc.* 2009 NCBC 25 ¶ 26 (N.C. Super. Ct. Nov. 12, 2009) (applying joint venture principles can cause an "end-run around" limited liability afforded by use of the corporate form). The Court's ruling harmonizes these policies. With knowledge that a partnership or joint venture existed, Best Cartage did not enter a contract with that partnership or joint venture, but entered into the Agreement with Stonewall, a limited liability company, and made no effort in the Agreement to preserve rights against Jackson. Best Cartage is fairly held accountable for its choice to deal with the individual company.


B.  Piercing the Corporate Veil

{28} Best Cartage asserts that Jackson must then answer for Stonewall's liabilities through a piercing of Best Cartage's corporate veil. The Court would normally determine which law to apply as the first step of its analysis. Here, that

self-determination is a matter of some complexity, for North Carolina courts have not yet determined which law will be applied to determine whether to pierce the veil of an out-of-state corporation, or whether the determination for a limited liability company would require some different analysis. The choice of law provision in the Agreement does not control the choice of law on the piercing issue because the claim does not arise under the Agreement. "The issue of piercing the corporate veil is collateral to and not part of the parties' negotiations or expectations with respect to the contract." *Dassault Falcon Jet Corp. v. Oberflex, Inc.*, 909 F.Supp. 345, 348 (M.D.N.C. 1995).[11]

{29} As an initial matter, Best Cartage claims that the Court cannot properly consider dismissing the piercing claim because the Court must look outside the pleadings to determine the place of Stonewall's incorporation, which determination is essential to the choice of law. But the Agreement itself makes clear that Stonewall is a Delaware limited liability company, and the Agreement is incorporated into the Amended Complaint. It being clear that Stonewall is a Delaware entity, Jackson urges that this Court should follow Magistrate Judge Eliason's analysis, adopt the internal affairs doctrine, and apply Delaware law. However, the Court agrees with Jackson's separate assertion that the choice of law is not dispositive because both Delaware and North Carolina require that Best Cartage plead more than it has pled.

{30} Best Cartage's piercing of the corporate veil claim rests on broad conclusory allegations, without factual specificity. (*See* Am. Compl. ¶¶ 45–52.) The Court need not accept these conclusions even in the context of reviewing a Rule 12(b)(6) motion. *Branch Banking & Trust Co. v. Lighthouse Fin. Corp.,* 2005 NCBC 3 ¶ 8 (N.C. Super. Ct. July 13, 2005). Here, Best Cartage fails in asserting the critical element of misusing the corporate form to achieve a wrongful or inequitable result. Other than the breach of contract itself, the only wrong Best Cartage asserts

---

[11] In *Dassault,* Magistrate Judge Eliason determined that, if faced with the issue, the North Carolina Supreme Court would apply the law of the place of incorporation, which in that case was North Carolina. 909 F.Supp at 348–49.

with regard to a misuse of corporate form is that Jackson did not actually sell its component material to Stonewall until after Stonewall had utilized it, and, as a consequence, Jackson was then able to retrieve its unused product without it being available to the receiver and general creditors. The alleged inference is that Jackson misused its dominion and control to defraud other creditors, including Best Cartage. (*See* Am. Compl. ¶¶ 45–52.) The Court does not believe these allegations support any inference of a wrongdoing justifying the use of the piercing the corporate veil doctrine.

{31} The Middle District of North Carolina has had occasion to analyze the piercing of the corporate veil issue under North Carolina and Delaware law on a similar broad complaint. The Court finds persuasive Judge Beaty's thorough analysis in concluding that the complaint he reviewed should be dismissed. Sitting in diversity, Judge Beaty examined the piercing of the corporate veil claim in *Richmond v. Indalex, Inc.*, 308 F.Supp.2d 648 (M.D.N.C. 2004).[12] There, Judge Beaty, as had Magistrate Judge Eliason, noted the unsettled conflicts of law issue. Unlike Magistrate Judge Eliason, who examined the issue in regard to a North Carolina corporation, the issue before Judge Beaty related to a Delaware corporation. Judge Beaty declined to resolve the conflicts of law issue, finding that the plaintiff there had failed to allege the elements demanded of a piercing the corporate veil claim under the case law of either Delaware or North Carolina. After a comprehensive analysis of precedents from both states, Judge Beaty concluded that in addition to having to allege domination and control, to sustain a claim for piercing the corporate veil, a plaintiff must further allege that this misuse of the corporate form was used to perpetuate a fraud or injustice. He concluded that the broad conclusory allegations did not measure up under either Delaware or North Carolina law, and accordingly, dismissed the complaint. *Id.* at 659.

---

[12] This opinion was entered prior to *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007), and therefore, was pursuant to the Rule 12 (b)(6) standard the North Carolina courts continue to follow. *See Richmond*, 308 F.Supp.2d at 654.

{32} Judge Beaty's analysis is equally applicable here and Best Cartage's complaint, like the one in *Richmond,* should be dismissed under either Delaware or North Carolina law because Best Cartage has not pled any fraud or injustice adequate to sustain its claim. The underlying breach of contract does not itself constitute a sufficient fraud or injustice. *See Mobil Oil Corp. v. Linear Films, Inc.,* 718 F.Supp. 260, 268 (D. Del. 1989); *see E. Mkt. Street Square, Inc. v. Tycorp Pizza IV, Inc.,* 175 N.C. App. 628, 637–38, 625 S.E.2d 191, 199 (2006).

{33} The Court finds Best Cartage's piercing claim to be inconsistent with its choice to contract solely with Stonewall, a limited liability company, having full knowledge at the time of contracting that Stonewall was in a partnership or joint venture with Jackson. Disregarding the protection of the limited liability company under these circumstance reaches beyond the intended purpose of the doctrine and improperly seeks to use a "drastic remedy" which should be utilized sparingly. *See Dorton v. Dorton,* 77 N.C. App. 667, 672, 336 S.E.2d 415, 419 (1985).

## VI. CONCLUSION

{34} For the reasons stated, Defendant Jackson Paper Manufacturing Company's Motion to Dismiss is GRANTED, and the Amended Complaint as to that Defendant is DISMISSED.

{35} Plaintiff and Receiver should confer and submit a Revised Case Management Report that proposes a schedule for the handling of the claims against Stonewall. Such report should be submitted on or before July 8, 2011. Discovery on those claims can proceed prior to the submission of the report.

IT IS SO ORDERED, this 8th day of June, 2011.